[Cite as *State v. Paskins*, 2022-Ohio-4024.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Earle E. Wise, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2021 CA 00033 |
| TYLER PASKINS | : |  |
|  | : |  |
| Defendant-Appellant | : | <u>OPINION</u> |

CHARACTER OF PROCEEDING:          Criminal appeal from the Fairfield County
                                                          Court of Common Pleas, Case No. 2020
                                                          CR 0603

JUDGMENT:                                         Affirmed and Remanded

DATE OF JUDGMENT ENTRY:          November 10, 2022

APPEARANCES:

For Plaintiff-Appellee                              For Defendant-Appellant

CHRISTOPHER A. REAMER              BRIAN A. SMITH
Fairfield County Prosecutor's Office       123 South Miller Road, Ste. 250
239 West Main Street, Suite 101           Fairlawn, OH 44333
Lancaster, OH 43130

*Gwin, J.,*

**{¶1}** Defendant-appellant Tyler Paskins ["Paskins"] appeals his conviction and sentence after a jury trial in the Fairfield County Court of Common Pleas.

*Facts and Procedural History*

**{¶2}** On December 17, 2020, the Fairfield County grand jury issued a two-count indictment finding probable cause that Paskins committed the offenses of Robbery, in violation of R.C. 2911.02(A)(2), a felony of the second degree and Felonious Assault, a violation of R.C. 2903.11(A)(1), a felony of the second degree.

**{¶3}** Michael Pound was homeless in November 2020 and had stayed multiple times at a residence located at 220 Washington Avenue in Lancaster, Ohio. The residence was rented by James Villers and frequented by multiple individuals. Pound had twenty years of drug addiction as well as criminal convictions attributed to his ongoing addiction.

**{¶4}** Sometime during the evening of November 25, 2020, approximately one hour before the events at Villers's residence took place, Pound was "dope sick" when he was approached on the street by Brandon Reed and Chuck Boystel. 2T. at 224; 253.[1] According to Reed, Boystel punched Pound two times in the face, knocking Pound out. Id. Pound's head made an audible sound as it hit the concrete sidewalk. 2T. at 254. Reed and Boystel continued walking away. 2T. at 225. Sometime later, Reed walked back to check on Pound only to find that Pound was not there. Id. at 226.

**{¶5}** Later, Reed was working with Paskins on installing a camera system on the front porch of Villers home. Pound and his girlfriend Cheyenne Randolph were

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

inside the home asleep. Pound woke up "dope sick" and vomited on a table in the living room area and then went to the bathroom adjacent to the kitchen area. When Randolph, who was pregnant at that time, went to the bathroom to check on Pound, he hit her in the stomach. Randolph screamed for help. 2T. at 314. Randolph then returned to the living room and began cleaning up the vomit, after which she sat down on the couch. Id. at 314-315. Pound went to the kitchen. Id. at 316; 357. Randolph testified that she was afraid of Pound. 2T. at 359. She ran into a nearby bedroom to get away from Pound after Pound came out of the bathroom.

{¶6} Paskins and Reed enter the house and immediately confront Pound. Pound is waving his hands and backing up when Paskins punched Pound in the face knocking Pound to the ground. 2T. at 230; 233-234; 260; 317; 3T. at 758. Paskins and Reed continued to punch and kick Pound as he lay balled up on the floor. 3T. at 452-453; 698-699; 700. Paskins struck Pound on the right side of Pound's face. 3T. at 523-525; 699.

{¶7} After Reed and Paskins walked away, Pound ran to a nearby bedroom. Randolph and another woman, Babette Beatty, were inside that bedroom. Pound did not accost either woman; rather, he attempted to block the door. Paskins, Reed and a third male forced their way into the bedroom. 2T. at 236-237; 3T. at 704-705. The trio hit Pound several times. 2T. at 238-239. Paskins testified that he told Pound to remove his pants, a pair of Rock Revival jeans belonging to Randolph, and give them back to her. 3T. at 761-762.

{¶8} Paskins described prior events of physical violence between Pound and Randolph in which he had intervened. During those altercations Paskins was always able to get Pound to stop by simply ordering him to do so. 3T. at 748-752.

{¶9} Pound could not remember many of the events that had occurred. Pound described waking up in Grant Hospital with a feeding tube, a breathing tube (tracheotomy), and a piece of his skull removed. 2T. at 160. Pound continued to have violent seizures up until the time of trial that he had never experienced before his stay in Grant Hospital. Id. at 166. Pound had additional surgeries to replace the piece of his skull that had been removed in September 2021.

{¶10} Reed testified that he was serving time for Felonious Assault against Pound at the time of Paskins trial. 2T. at 206. Reed discussed that he was a drug addict with a criminal past and was to receive some consideration toward future judicial release in exchange for his cooperation with the State of Ohio. Id. at 209-213.

{¶11} Randolph testified she was granted immunity prior to her testimony. 2T. at 293-295.

{¶12} At the conclusion of all evidence and after hearing the arguments of the parties the trial court agreed to include an instruction on self-defense on the theory that Paskins acted in defense of Randolph. The Court further included an instruction as to Complicity.

{¶13} The jury found Paskins not guilty of Robbery, and guilty on the amended charge of Complicity to Felonious Assault. On September 24, 2021, following a hearing, the trial court sentenced Paskins to an indefinite sentence of 7 to 10 1/2 years in prison. Paskins' sentence was ordered to be served consecutively to a prior conviction of Felonious Assault that occurred in the Fairfield County jail in Fairfield County Court of Common Pleas Case. No. 21CR118. *See*, *State v. Paskins,* 5th Dist. Fairfield No. 2021 CA 00032, 2022-Ohio-3810.

*Assignments of Error*

{¶14} Paskins raises six Assignments of Error,

{¶15} "I.   APPELLANT'S CONVICTION FOR COMPLICITY TO FELONIOUS ASSAULT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶16} "II.   APPELLANT'S CONVICTION FOR COMPLICITY TO FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} "III. THE TRIAL COURT ERRED IN ITS DECISION TO OVERRULE APPELLANT'S MOTION TO DECLARE A MISTRIAL BASED ON JUROR MISCONDUCT, IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶18} "IV. THE TRIAL COURT'S SENTENCE OF APPELLANT WAS CONTRARY TO LAW, BECAUSE IT DID NOT MAKE THE REQUIRED FINDINGS IN ITS SENTENCING ENTRY TO IMPOSE CONSECUTIVE SENTENCES UNDER R.C. 2929.14(C)(4).

{¶19} "V. THE TRIAL COURT'S SENTENCE OF APPELLANT WAS CONTRARY TO LAW BECAUSE IT SENTENCED APPELLANT TO A "MANDATORY" SENTENCE WHERE IT WAS NOT AUTHORIZED UNDER R.C. 2929.13(F).

{¶20} "VI.   R.C. 2967.171, ALSO KNOWN AS THE "REAGAN TOKES ACT," WHICH ALLOWS THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION TO UNILATERALLY EXTEND APPELLANT'S SENTENCE, IS UNCONSTITUTIONAL UNDER BOTH THE UNITED STATES CONSTITUTION, ARTS.

I, II, AND III, AND AMENDS. V, VI AND XIV, AND THE OHIO CONSTITUTION, ART.  I,
§ 10, AND ART. IV, §§ I AND 3(B)(2).

## I.

{¶21}  In his First Assignment of Error, Paskins argues that there is insufficient evidence to support his conviction for complicity to felonious assault.   Specifically, Paskins contends that the state's evidence was insufficient to prove beyond a reasonable doubt that Paskins was complicit in causing serious physical harm to Pound.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶22}  The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 577 U.S. 92, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶23}  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997)*; *Walker*, 150 Ohio St.3d at ¶30.  "The relevant inquiry is whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* 150 Ohio St.3d at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**Issue for Appellate Review**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind that Paskins was guilty beyond a reasonable doubt of Complicity in the Commission of the Offense of Felonious Assault*

{¶24} Paskins was convicted of complicity under R.C. 2923.03(A)(1). R.C. 2923.03, Complicity, provides,

> (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
>
> (1) Solicit or procure another to commit the offense;
>
> (2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

(4) Cause an innocent or irresponsible person to commit the offense.

{¶25} The elements of felonious assault are set forth in R .C. 2903.11, which provides in pertinent part:

(A) No person shall knowingly:

(1) Cause serious physical harm to another or to another's unborn;

(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance, as defined in section 2923.11 of the Revised Code.

"Serious physical harm to persons" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶26}** It is true that a person's mere association with a principle offender is not enough to sustain a conviction based on aiding and abetting. *State v. Sims*, 10 Ohio App.3d 56, 58, 460 N.E.2d 672, 674-675 (8th Dist. 1983). With respect to the requirements for a conviction for complicity by aiding and abetting, the Supreme Court of Ohio has stated,

> To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime.

*State v. Johnson*, 93 Ohio St.3d 240, 2001–Ohio–187, 749 N.E.2d 749, at syllabus.

**{¶27}** Aiding and abetting may be shown by both direct and circumstantial evidence and participation may be inferred from presence, companionship, and conduct before and after the offense is committed. *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68, (8th Dist. 1981), *citing State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist. 1971); *See also, State v. Mendoza*, 137 Ohio App.3d 336, 342, 738 N.E.2d 822(3rd Dist. 2000), *quoting State v. Stepp*, 117 Ohio App.3d 561, 568–569, 690 N.E.2d 1342(4th Dist. 1997).

**{¶28}** Aiding and abetting may also be established by overt acts of assistance such as driving a getaway car or serving as a lookout. *State v. Cartellone*, 3 Ohio App.3d at 150, 444 N.E.2d 68. *See also, State v. Trocodaro*, 36 Ohio App.2d 1, 301 N.E.2d 898 (10th Dist. 1973); *State v. Lett*, 160 Ohio App.3d 46, 52, 2005–Ohio–1308, 825 N.E.2d

1158, 1163 (8th Dist.); *State v. Polite,* 5th Dist. Stark No. 2017 CA 00129, 2018-Ohio-1372, ¶56.

**{¶29}** "The court must view the evidence in the light most favorable to the prosecution and defer to the trier of fact on questions of credibility and the weight assigned to the evidence. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 146." *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132; *State v. McFarland,* 164 Ohio St.3d 36, 2020-Ohio-3343, 164 N.E.3d 306, ¶29.

**{¶30}** In the case at bar, Paskins contends that the evidence is insufficient to prove beyond a reasonable doubt that Paskins participated in causing serious physical harm to Pound because Pound's injuries could have been the result of the attack by Boystel the evening or early morning hours before Paskins hit Pound. Further, Paskins argues that he only struck Pound one time, while others continued to hit Pound multiple times as Paskins attempted to stop them.

**Pound's Injuries**

**{¶31}** It is beyond question that Pound suffered serious physical injuries. Paskins himself admitted to punching Pound in his face knocking Pound to the ground. 3T. at 758; 796. Paskins further admitted that Reed was punching Pound at the same time. 3T. at 758-759. Reed was convicted of felonious assault for his part in the affray. 2T. at 206.

**{¶32}** Although Paskins testified that he hit Pound only one time, others disagreed. Reed testified that Paskins hit Pound in the face knocking him down. 2T. at 234. Once inside the bedroom in which Pound fled, Paskins hit Pound in Pound's face a couple more times. Id. at 238-239. Reed continued to hit and kick Pound at the same time. Id. A third person joined in the attack. 2T. at 239-240.

{¶33} Cheyenne Randolph testified that Paskins hit Pound in the face knocking him to the ground. 2T. at 317. Several individuals participated in hitting Pound. Id. Paskins hit Pound in the bedroom along with Reed and "Gilliam." Id. at 322; 371.

{¶34} James Villiers testified Pound, Reed and "Mike" were all involved in hitting Pound. 3T. at 452- 454. Both Paskins and Reed were striking Pound with their hands and feet. 3T. at 525-526. Paskins was on the right and Reed on the left. Id. at 526. Villiers testified that Reed was punching Pound in his head. Id. at 526. Villiers further testified that Pound's face looked normal when Pound woke up that morning. 3T. at 448; 521.

{¶35} Babette Beatty testified that Paskins hit Pound a "couple of times" on the right side of Pound's face. 3T. at 698-699; 709. Reed was also hitting Pound until Paskins pulled him off of Pound. Id. at 700; 709. A third individual was also hitting Pound. Id. at 709-710.

{¶36} Each witness testified that Pound did not attempt to fight back or defend himself at any time. Each witness testified that after fleeing to the bedroom, Pound did not threaten or accost Babette Beatty or Cheyenne Randolph; rather, he attempted to block the door to prevent his attackers from entering.

{¶37} Contrary to Paskins arguments sufficient evidence was presented to prove beyond a reasonable doubt that Paskins was complicit in causing serious physical harm to Pound. Paskins admitted that he and at least Reed participated in striking Pound. No witness testified to seeing injuries to Pound's face or head prior to the affray at Villiers residence. Villiers testified that he did not observe any injuries to Pound's face or head

prior to the attack by Paskins and Reed.  Reed pled guilty to his participation in the felonious assault of Pound

{¶38}  Under Ohio law, "'there is no distinction between a defendant convicted of complicity or as a principal offender.'" *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 247, *quoting [State v.] Alexander [* 6th Dist. Wood No. WD-02-04-047, 2003-Ohio-6969] at ¶ 70.  *See also State v. Lewis*, 11th Dist. Lake No. 2012-L-074, 2013-Ohio-3974, ¶ 83 ("the legal distinction between principal offender and aider and abettor is not viewed as significant").  Pursuant to R.C. 2923.03(F), "[a] charge of complicity may be stated in terms of [that] section, or in terms of the principal offense."

{¶39}  Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Paskins did at the very least aid and abet another in the commission of felonious assault.

{¶40}  We hold, therefore, there was sufficient evidence to support Paskins's conviction for complicity in the commission of the offense of Felonious Assault.

{¶41}  Paskins First Assignment of Error is overruled.

II.

{¶42}  In his Second Assignment of Error, Paskins maintains that his conviction is against the manifest weight of the evidence.  Specifically, Paskins argues that the evidence demonstrates that he was acting in defense of Cheyenne Randolph.  Further, Paskins contends that the jury verdict finding him guilty of complicity in the commission of the offense of felonious assault is inconsistent with the jury verdict finding him not guilty of felonious assault.

**Standard of Appellate Review – Manifest Weight.**

{¶43} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

{¶44} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

{¶45} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**:  *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

{¶46}  In the case at bar, the trial court instructed the jury on self-defense / defense of another using deadly and non-deadly force.  4T. at 822-823; 906-14.  Further, the trial court instructed the jury in accordance with the amended version of R.C. 2901.05(B)(2) that shifted the burden of proof on self-defense from defendant to prosecution.  Id. at 823; 908-909.

{¶47}  R.C. 2901.05 provides in relevant part,

(A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution.  The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense *other than self-defense, defense of another, or defense of the accused's residence as described in division (B)(1) of this section,* is upon the accused.

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence.  If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, *the prosecution must prove beyond a reasonable*

*doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.*

*(2) Subject to division (B)(3) of this section, a person is presumed to have acted in self-defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.*

*(3) The presumption set forth in division (B)(2) of this section does not apply if either of the following is true:*

*(a)* The person against whom the defensive force is used has a right to be in, or is a lawful resident of, the residence or vehicle.

*(b)* The person who uses the defensive force uses it while in a residence or vehicle and the person is unlawfully, and without privilege to be, in that residence or vehicle.

*(4) The presumption set forth in division (B)(2) of this section is a rebuttable presumption and may be rebutted by a preponderance of the evidence, provided that the prosecution's burden of proof remains proof beyond a reasonable doubt as described in divisions (A) and (B)(1) of this section.*

Emphasis added.  Further the trial court instructed the jury in accordance with the so-called "castle doctrine" most recently amended April 6, 2021 codified under R.C. 2901.09,

(A) As used in this section, "residence" has the same meaning as in section 2901.05 of the Revised Code.

(B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.

(C) A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety.

*See,* 4T. at 908.

**{¶48}** Under a theory of self-defense using non-deadly force, the defendant claims that (1) he was not at fault in creating the situation giving rise to the affray; (2) he had reasonable grounds to believe or an honest belief that he or she was in imminent danger of bodily harm, and (3) he did not use more force than was reasonably necessary to defend against the imminent danger of bodily harm. *State v. Staats*, 5th Dist. Stark No. 2019CA00181, 2021-Ohio-1325, ¶28.

**{¶49}** Under R.C. 2901.05(B)(1) there are two burdens. *State v. Davidson-Dixon*, 8th Dist. Cuyahoga No. 109557, 2021-Ohio-1485, ¶ 18. The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that the defendant used the force in self-defense. *State v. Sturgill*, 12th Dist. Clermont No. CA2020-03-018, 2020-Ohio-6665, ¶ 19. The burden then shifts to the state under its

burden of persuasion to prove beyond a reasonable doubt that the defendant did not use the force in self-defense. Id. at ¶ 17. In other words, if the evidence tends to support that the defendant acted in self-defense, then the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense. R.C. 2901.05(B)(1); *State v. Gatewood,* 1st Dist. Hamilton No. C-190654, 2021-Ohio-3325, ¶ 68. The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893(1986). *Accord, State v. Carney,* 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶31; *State v. Staats,* 5th Dist. Stark No. 2019CA00181, ¶ 28.

{¶50} The second element of self-defense "is a combined subjective and objective test." *State v. Thomas*, 77 Ohio St.3d 323, 330, 673 N.E.2d 1339 (1997). The person's belief must be objectively reasonable under the circumstances and he must subjectively believe he needed to resort to force to defend himself or the other person. Id. at 330–331, 673 N.E.2d 1339.

> "The objective part of the test requires consideration of 'whether, considering all of the defendant's particular characteristics, knowledge, or lack of knowledge, circumstances, history, and conditions at the time of the attack,' a reasonable person would believe that danger was imminent." *State v. Hendrickson*, 4th Dist. No. 08CA12, 2009-Ohio-4416, 2009 WL 2682158, ¶ 30, *quoting State v. Keith*, 10th Dist. Franklin Nos. 08AP–28, 08AP–29, 2008-Ohio-6122, ¶ 23*, citing Thomas*, 77 Ohio St.3d at 330, 673 N.E.2d 1339. The subjective part requires consideration of whether the defendant himself actually believed that he was in imminent danger. Id.

*State v. Bundy,* 4th Dist. Pike No. 11 CA 818, 2012-Ohio-3934, ¶54; *Accord, State v. Wilson,* 1st Dist. Hamilton No. C-210535, 2022-Ohio-3801, ¶13.

**{¶51}** The third element of self-defense requires that the degree of force used by the defendant in self-defense or defense of another must be "'warranted under the circumstances" and "'proportionate to the perceived threat.'" *State v. Bloodworth,* 12th Dist. Warren No. CA2021-08-073, 2022-Ohio-1899, ¶ 43, *quoting State v. White,* 12th Dist. Warren No. CA2018-09-106, 2019-Ohio-4312, ¶46; *State v. Hendrickson*, 4th Dist. No. 08CA12, 2009-Ohio-4416, ¶ 31, *citing State v. Palmer*, 80 Ohio St.3d 543, 564, 687 N.E.2d 685 (1997).

**{¶52}** As we have found in our disposition of Paskins's First Assignment of Error, sufficient evidence was presented that Paskins was at the very least complicit in causing Pound's serious physical injuries.

**{¶53}** In the case at bar, Paskins testified that Pound had never been aggressive toward him in the past when Paskins intervened in Pound and Randolph's disputes. 3T. at 755; 4T. at 794. Paskins was able to diffuse those situations by using words alone. 3T. at 752. Paskins testified that he only hit Pound one time and Reed hit Pound multiple times. Afterward, the pair left Pound laying on his back in a fetal position in the kitchen unattended. Id. at 762. When he saw Reed attempting to kick down the bedroom door, Paskins testified that he ran to assist him. 3T. at 763. Paskins testified that Cheyenne was making a fuss about the Rock Revival jeans and he told Pound to take them off. 3T. at 761.

**{¶54}** Although Paskins testified that he only punched Pound one time in the right side of Pound's face, evidence was presented to refute this claim.

{¶55} Reed testified that Pound was backing away when he and Paskins confronted Pound in the kitchen area. 2T. at 231; 233. Paskins punch sent Pound to the floor where he remained balled up in a fetal position. 2T. at 235-236. Reed testified that Paskins continued to hit Pound while he was on the floor. Id. at 238-239. Reed testified that Paskins also punched Pound after Pound had retreated to the bedroom. 2T. at 282.

{¶56} Cheyenne Randolph testified that after Pound had hit her in the bathroom, she returned to the living room and began cleaning after which she sat down on the couch. 2T. at 314-315. Pound was in a fetal position on the kitchen floor asking Reed and Paskins to stop. Id. at 317; 322. Paskins and Reed walked away and left Pound unattended on the kitchen floor. 2T. at 391. Randolph testified that Pound ran into the bedroom and dropped on the floor behind the door. 2T. at 337. Pound did not strike or threaten Randolph or Beatty while in the bedroom. 3T. at 321.

{¶57} Villiers testified that Pound was balled up on the floor in a fetal position while Paskins and Reed punched and kicked him. 3T. at 451. Pound was telling them to stop. Id. at 453. Villers testified that Pound did not chase after Randolph. Id. at 520.

{¶58} Beatty testified that Paskins struck Pound more than once. 3T. at 698-699; 709-710. Paskins told Pound to take the Rock Revival jeans off. 3T. at 701.

{¶59} All the witnesses testified that Pound did not attempt to fight back, and did not in fact hit, punch or kick anyone after Paskins and Reed entered the home. Pound was attempting to flee his attackers, rather than attack Randolph by running to the bedroom. Further, Pound is the only individual who needed medical treatment.

{¶60} The evidence does not support Paskins assertion that he was in fear that Randolph was in imminent danger of bodily harm or that he used no more force than necessary to repel any attack directed toward Randolph.

{¶61} In the past, Paskins successfully diffused situations by getting between the parties and using his words. Including Paskins, at least one other person responded to Randolph's screams. Paskins, Reed and at least one other person cornered Pound in the kitchen area while Randolph was in another area of the home. Pound attempted to back up, he does not shout or attack Paskins or Reed, and Pound made no attempt to attack Randolph once Reed and Paskins had him cornered.

{¶62} Paskins hit Pound dropping Pond to the floor. Pound was on his back, balled up in a fetal position, asking the pair to stop. Pound does not attempt to fight. The pair proceeded to hit and kick Pound. Pound retreats to a bedroom. When Paskins sees Reed attempting to force his way into the room, Paskins runs to assist him. Evidence was presented that Paskins hit Pound while Pound lay on the bedroom floor.

{¶63} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found Paskins did not have a reasonable belief Randolph was in imminent danger of bodily harm, and that Paskins used more force than was reasonably necessary to defend against any imminent danger of bodily harm.

**Inconsistent Verdicts**

{¶64} Paskins next argues the finding by the jury that Paskins was not guilty of Felonious Assault is inconsistent with the jury finding Paskins guilty of Complicity in the Commission of the Offense of Felonious Assault.

{¶65} R.C. 2923.03(F) states "A charge of complicity may be stated in terms of this section, or in terms of the principal offense."

{¶66} "The Supreme Court of Ohio clarified Ohio's position on the issue of complicity in *State v. Perryman*, 49 Ohio St.2d 14, 358 N.E.2d 1040(1976), *vacated in part on other grounds sub nom, Perryman v. Ohio*, 438 U.S. 911, 98 S.Ct. 3136, 57 L.Ed.2d 1156(1978). The court unequivocally approved of the practice of charging a jury regarding aiding and abetting even if the defendant was charged in the indictment as a principal. Id. The court held that the indictment as principal performed the function of giving legal notice of the charge to the defendant. Id. Therefore, if the facts at trial reasonably supported the jury instruction on aiding and abetting, it is proper for the trial judge to give that charge. *Perryman, supra* at 27, 28." *State v. Payton*, 8th Dist. Nos. 58292, 58346, 1990 WL 48952 (April 19, 1990).

{¶67} Thus, it can be said that "complicity" is necessarily included in an indictment. In other words, since a jury can be instructed on the indicted offense and alternatively instructed in terms of complicity notwithstanding the fact that the indictment reads in terms of only the principal offense, the complicity allegation is inherent in the indictment. *See, State v. Christian,* 184 Ohio App.3d 1, 2009-Ohio-4811, 919 N.E.2d 271(7th Dist.), ¶31; 34.

{¶68} In *State v. Gapen,* the Ohio Supreme Court observed,

First, "[i]nconsistent verdicts on different counts of a multi-count indictment do not justify overturning a verdict * * *." *State v. Hicks* (1989), 43 Ohio St.3d 72, 78, 538 N.E.2d 1030, *citing United States v. Powell* (1984), 469 U.S. 57, 68, 105 S.Ct. 471, 83 L.Ed.2d 461; *see, also, State v. Mapes* (1985), 19 Ohio St.3d 108, 112–113, 19 OBR 318, 484 N.E.2d 140. As we stated in *State v. Adams* (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, paragraph two of the syllabus, "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." Thus, inconsistency of sentencing verdicts on the different counts does not require that Gapen's death sentence be vacated.

104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 138.

**{¶69}** In the case at bar, the jury's verdicts are not inconsistent. While the same underlying conduct resulted in each of the counts, each count had distinct elements unrelated to the other offense. The Indictment was charged in terms of the principal offender. The jury was further instructed that they could find Paskins guilty if he was complicit in the felonious assault. This is the functional equivalent of a multi-count indictment.

**{¶70}** Though inconsistency can indicate confusion or doubt on the part of jurors, it can also indicate compromise or mercy. *State v. Trewartha,* 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218, ¶ 16 (10th Dist.).

**{¶71}** Accordingly, we reject Paskins argument alleging inconsistent verdicts as it is based on different counts as well as different elements. At the very least there is sufficient evidence to establish that Paskins aided and abetted Reed and possibly a third individual in the infliction of serious physical harm to Pound. Accordingly, the verdicts are consistent.

**{¶72}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355, quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Paskins conviction is not against the sufficiency or the manifest weight of the evidence. The jury neither lost their way nor created a miscarriage of justice in convicting Paskins of the offense.

**{¶73}** Paskins Second Assignment of Error is overruled.

III.

**{¶74}** In his Third Assignment of Error, Paskins contends that the trial court violated his substantial rights because the judge did not declare a mistrial based upon juror misconduct. Specifically, trial counsel reported that, while in the restroom during a break in the trial, he overheard two jurors discussing the case.

**Standard of Appellate Review**

**{¶75}** In *State v. Hessler*, 90 Ohio St.3d 108, 115-116, 734 N.E.2d 1237, 1247(2000) the Ohio Supreme Court set forth our standard of review when juror misconduct is alleged:

As a reviewing court, we show deference to the trial judge, who sees and hears the events and thus is in a better position to accurately evaluate the situation and determine the appropriate scope of inquiry. *State v. Huertas* (1990), 51 Ohio St.3d 22, 29, 553 N.E.2d 1058, 1067; *United States v. Ramos* (C.A.5, 1995), 71 F.3d 1150, 1153-1154. Therefore, we employ an abuse-of-discretion standard and will not reverse the trial court unless it has handled the alleged juror misconduct or ruled upon the post-trial motion in an 'unreasonable, arbitrary, or unconscionable manner'. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144, 149.

90 Ohio St.3d 115-116, 734 N.E.2d 1237, 1247; *State v. McMillen*, 5th Dist. Stark No. 2008-CA-0122, 2009-Ohio-210, ¶ 124-125.

**Issue for Appellate Review:** *Whether the trial court abused its discretion by denying Paskins's motion for a mistrial.*

**{¶76}** During a break in the trial, defense counsel apparently walked into a public restroom and overheard what he deemed an inappropriate communication between two jurors. The court agreed to engage in a voir dire of juror numbers 56 and 58 who were apparently the two jurors in the restroom.

**{¶77}** Under examination by the trial court Juror 56 conceded he posed a question about who else the jury might hear from today to Juror number 58 while inside the bathroom. 3T. at 479. Juror 56 also related that one time while testimony was being presented, Juror number 58 asked him a question to clarify something that had been said during court. 3T. at 480, 481. Juror 56 went on to explain that he had not formed any opinion on guilt or innocence of the defendant. He assured the court that he would

follow the court's instructions not to discuss the case until deliberations began. Finally, he assured the court that no discussions of substance concerning the case had occurred. Nor had any discussions concerning the evidence or credibility of witnesses occurred amongst jurors. 3T. at 482-491.

{¶78} The court and counsel then questioned Juror number 58. Juror 58 essentially testified that although Juror 56 may have attempted to speak with him in the restroom, Juror 58 was washing his hands and really did not hear what was said. 3T. at 492, 493. When asked about additional alleged conversations between jurors, Juror 58 stated that he took the trial court's admonishment not to discuss the case very seriously and was not engaged in any type of conversation about the case. He further related he had not heard other jurors having substantive discussions about the case. 3T. at 495.

{¶79} The trial court inquired of the jury array as a group to determine if any juror had formed an opinion regarding the guilt or innocence of the accused based upon discussions that should not have taken place. The court further inquired whether any discussion had occurred that impacted their ability to be fair and impartial. 3T. at 500, 501. No juror raised their hand in response to the trial court's inquiry. 3T. at 501. The trial court further admonished the jurors that despite their natural curiosity about the direction of the trial they should not voice their inquiries to any other juror. Id.

{¶80} Paskins's motion for a mistrial was overruled by the trial court. 3T. at 502.

{¶81} The jury is obligated to decide a case solely on the evidence, and any communication or contact outside the courtroom or jury room about the matter at trial between a juror and another person, and any independent inquiry or experiment by a

juror concerning the evidence or the law, constitutes juror misconduct.  *State v. Taylor*, 73 Ohio App.3d 827, 831, 598 N.E.2d 818(1991).  Further, when a juror refuses to consider the evidence or forms an opinion as to guilt or innocence before all the evidence is presented, such activity constitutes misconduct.  Id. However, the United States Supreme Court has recognized:

[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation.  Were that the rule, few trials would be constitutionally acceptable....  [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.  Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217 102 S.Ct. 940, 946, 71 L.Ed.2d 78(1982); *United States v. Olano*, 507 U.S. 725, 738, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508(1993); *State v. McMillen*, 5th Dist. Stark No. 2008-CA-00122, 2009-Ohio-210, ¶ 122.

{¶82}  The trial court [is] entitled to believe or disbelieve all or part of the [jurors'] statements * * *" in determining whether there was juror misconduct.  *State v. Morris*, 9th Dist. Summit No. 25519, 2011-Ohio-6594, 2011 WL 6740752, ¶ 32.  S*ee also State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus ("[T]he credibility of the witnesses are primarily for the trier of the facts.").  Further, the trial judge is in the best position to ascertain the nature of the alleged jury misconduct and to fashion

the appropriate remedy if the conduct did occur. *State v. Wharton*, 9th Dist. Summit No. 23300, 2007-Ohio-1817, ¶ 25.

**{¶83}** We find that substantial evidence exists in the record to support a determination that the jurors committed no misconduct. Looking at the above incidents, we cannot find the trial court abused its discretion. As required, the court conducted a hearing to inquire into whether there had been any misconduct on the part of the jurors. The record does not disclose that any substantive conversation occurred between or among any of the jurors about the substance of the case. No evidence establishing juror discussions about the substance of the case, the evidence, credibility of witnesses, or the guilt or innocence of the accused has been cited, or found in our examination in the record.

**{¶84}** Paskins Third Assignment of Error is overruled.

IV.

**{¶85}** In the case at bar, the trial court ordered that Paskins' sentence in this case be served consecutively to his sentence in Fairfield County Court of Common Pleas, Case Number 2021 CR 0118. In his Fourth Assignment of Error, Paskins challenges the imposition of the consecutive terms of imprisonment on the ground that the trial court failed to make the findings required by R.C. 2929.14(C)(4) in the sentencing entry.

**{¶86}** Paskins concedes the trial court made the necessary findings on the record during the sentencing hearing; however, he argues the trial courts failure to select specifically which of the final three factors under 2929.14 (C)(4)(a) (b) or (c) and incorporate that factor verbatim into the sentencing entry renders the judgment entry contrary to law.

**Standard of Appellate Review**

{¶87} A court reviewing a criminal sentence is required by R.C. 2953.08(F) to review the entire trial court record, including any oral or written statements and presentence-investigation reports. R.C. 2953.08(F)(1) through (4).

{¶88} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶22; *State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶28.

**R.C. 2929.14 (C)(4) Consecutive Sentences**

{¶89} In order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any

of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶90} "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]" State *v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37. Otherwise, the imposition of consecutive sentences is contrary to law. *See* id. The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." Id.

**Issue for Appellate Review:** *Whether the trial court properly imposed consecutive sentences in Paskins's case.*

{¶91} R.C. 2929.41 provides,

(A) Except as provided in division (B) of this section, division (C) of section 2929.14, or division (D) or (E) of section 2971.03 of the Revised Code, *a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state,* another state, or the United States. Except as provided in division (B)(3) of this section, a jail term or sentence of imprisonment for misdemeanor shall be served concurrently with a prison term or sentence of imprisonment for felony served in a state or federal correctional institution.

Emphasis added.  The presumption created in R.C. 2929.41 can be overcome.

**{¶92}**  In *State v. Bates,* the Ohio Supreme Court ruled the trial court may impose a prison sentence to be served consecutively to a prison sentence imposed on the same offender by another Ohio court.  118 Ohio St.3d 174, 2008-Ohio-1983, 881 N.E.2d 328, ¶19.   To overcome the presumption that sentences run concurrently and impose consecutive sentences in an unrelated case, the trial court must comply with R.C. 2929.14(C).  *State v. Harmon,* 7th Dist. Columbiana No. 21 CO 0015, 2022-Ohio-3617, ¶7; *State v. Irwin-Debraux,* 2nd Dist. Montgomery No. 28308, 2019-Ohio-5013, ¶12.

**{¶93}**  In the case at bar, the trial court's sentencing entry reads as follows,

> The sentence imposed in this case is to run consecutive to Fairfield County Case 21 CR 118.
>
> The Court found that pursuant to R.C. §2929.14(C)(4), consecutive sentences arc necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.  *The Court further found that one or more of the factors in R.C. §2929.14(C)(4)(a), (b), or (c) was present and, as such, that consecutive sentences were appropriate.*

Emphasis added.

**{¶94}**  Recently, the Ohio Supreme Court reviewed a case relevant to the one at bar.  In *State v. Leegrand,* the state appealed asking the Court to hold that a sentencing entry need not recite the exact statutory language as long as the entry conveys that  the

trial court imposed the statutorily required sentence.  Slip Op. 2022-Ohio-3623(Oct. 13, 2022), ¶4.  In that case,

> [T]he issue before [the Court] is the portion of the sentencing entry for Leegrand's murder conviction, which states that he was sentenced to "LIFE IN PRISON WITH ELIGIBILITY OF PAROLE AFTER 15 YEARS." (Capitalization sic.) Leegrand appealed that sentence, arguing that the sentence was "improper and incorrect" under R.C. 2929.02(B)(1), which states that the penalty for murder shall be "an indefinite term of fifteen years to life." The Eighth District Court of Appeals affirmed Leegrand's convictions.  The court of appeals concluded, however, that the trial court's sentencing language regarding the murder count was dissimilar enough from the language of R.C. 2929.02(B)(1) to necessitate vacation of that sentence and a remand to the trial court for resentencing.

Id.  ¶3. The Ohio Supreme Court ruled the trial court's failure to use the specific language of the sentencing statute in its sentencing entry is not error when the entry conveys exactly the same meaning as the statutory language.  Of relevance to the case at bar is the Court's further observation,

> Our decision leaves other aspects of the court of appeals' judgment unaffected, including its affirmance of Leegrand's convictions and its remand order to the trial court to "correct the portion of its sentencing entry via nunc pro tunc to include the findings required by R.C. 2929.14(C)(4) when ordering Leegrand's sentence in this case to run consecutively to his sentence in CR-16-608028," 2020-Ohio-3179, ¶ 90.

Slip Op. 2022-Ohio-3623, ¶10.  Thus, it does not appear that this Court may correct a trial court's error in failing to include the findings required by R.C. 2929.14(C)(4) (a), (b), or (c) in the sentencing entry.

{¶95}  In *State v. Bonnell,* the Ohio Supreme Court held,

A trial court's inadvertent failure to incorporate the statutory findings in the sentencing entry after properly making those findings at the sentencing hearing *does not render the sentence contrary to law*; rather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court.

140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶30 (emphasis added).  *Bonnell* does not state that a reviewing court may look to the record to supply the terms missing from the trial court's sentencing entry; rather, the trial court must correct the omission by nunc pro tunc entry.

{¶96}  At the sentencing hearing it is clear, and the parties agree, that the trial court made the findings under R.C. 2929.14(C)(4).  In addition, the parties agree that the trial court made the additional finding pursuant to R.C. 2929.14(C)(4)(c).  Sent. T. at 36-37.  Unfortunately, the trial court did not include this additional finding in the sentencing entry.

{¶97}  Accordingly, Paskins Fourth Assignment of Error is sustained to the extent that we remand this case to the trial court for the sole purpose of issuing a nunc pro tunc entry that includes the additional finding under R.C. 2929.14(C)(4)(a), (b), or (c), in accordance with the Ohio Supreme Court's decision in *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶30.

V.

**{¶98}** In his Fifth Assignment of Error, Paskins contends his sentence is contrary to law because he was sentenced to a "mandatory" sentence where it was not authorized under R.C. 2929.13(F).

**Standard of Appellate Review**

**{¶99}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶22; *State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶31. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, ¶28.

**Issue for Appellate Review:** *Whether the trial court properly imposed a mandatory sentence*

**{¶100}** R.C. 2929.13(F) provides in relevant part,

Notwithstanding divisions (A) to (E) of this section, the court shall impose a prison term or terms under sections 2929.02 to 2929.06, section 2929.14, section 2929.142, or section 2971.03 of the Revised Code and … shall not reduce the term or terms pursuant to section 2929.20, section 2967.19, section 2967.193, or any other provision of Chapter 2967. or Chapter 5120. of the Revised Code for any of the following offenses:

* * *

(4) A felony violation of section 2903.04, 2903.06, 2903.08, *2903.11,*

2903.12, 2903.13, 2905.32, 2907.07, 2921.321, or 2923.132 of the Revised

Code *if the section requires the imposition of a prison term*;

* * *

(6) Any offense that is a first or second degree felony *and that is not*

*set forth in division (F)(1), (2), (3), or (4) of this section*, if the offender

previously was convicted of or pleaded guilty to aggravated murder, murder,

any first or second degree felony, or an offense under an existing or former

law of this state, another state, or the United States that is or was

substantially equivalent to one of those offenses;

* * *

Emphasis added.

**{¶101}** Paskins was convicted of complicity to felonious assault, a felony of the second degree in violation of R.C. 2903.11.   R.C. 2929.13(D)(1) provides that when sentencing for a first or second-degree felony "it is presumed that a prison sentence is necessary in order to comply with the purposes and principles of sentencing." Nonetheless, R.C. 2929.13(D)(2) provides that "[n]otwithstanding the presumption * * * the sentencing court *may* impose a community control sanction," but only if the sentencing court finds that a community control sanction would (1) adequately punish the offender and protect the public from future crime, and (2) not demean the seriousness of the offense because the statutory less serious sentencing factors outweigh the more serious factors.  (Emphasis added),

{¶102} Therefore, although a prison sentence is "presumed" for a felonious assault, the presumption is rebuttable. Accordingly, a prison sentence is not required for purposes of R.C. 2929.13(F)(4). Because a prison sentence is not required, a conviction for felonious assault "is not set forth in division (F)(1), (2), (3), or (4)" of R.C. 2929.13(F) for purposes of R.C. 2929.13(F)(6).

{¶103} R.C. 2929.13(F)(6) requires a mandatory prison term for any offense that is a * * * second-degree felony when the defendant has a prior conviction for a * * * second-degree felony." *State v. Kinney*, 1st Dist. Hamilton No. C-160415, 2018-Ohio-404, ¶23. Accordingly, Paskins sentence in this case would be mandatory under R.C. 2929.13(F)(6) because Paskins was convicted and sentenced for an unrelated felonious assault on September 8, 2022, prior to his conviction and sentence in the case at bar. See, *State v. Paskins,* 5th Dist. Fairfield No. 2021 CA 00032, 2022-Ohio-3810, ¶1.

{¶104} Therefore, under R.C. 2929.13(F)(6), the trial court was required to sentence Paskins to a mandatory prison term.

{¶105} Paskins Fifth Assignment of Error is overruled.

VI.

{¶106} In his Sixth Assignment of Error, Paskins contends the Reagan Tokes Act is unconstitutional. Specifically, he argues the Reagan Tokes Act violates his constitutional right to trial by jury and due process of law, and further violates the constitutional requirement of separation of powers.

{¶107} For the reasons stated in my dissenting opinion in *State v. Wolfe*, 5th Dist. Licking No. 2020CA00021, 2020-Ohio-5501, we find the Reagan Tokes Law does not violate an appellant's constitutional rights to trial by jury and due process of law, and

does not violate the constitutional requirement of separation of powers. We hereby adopt the dissenting opinion in *Wolfe* as the opinion of this Court. In so holding, we also note the sentencing law has been found constitutional by the Second, Third, and Twelfth Districts, and by the Eighth District sitting *en banc*. *See e.g.*, *State v. Ferguson*, 2nd Dist. Montgomery No. 28644, 2020-Ohio-4154; *State v. Hacker*, 3rd Dist. Logan No. 8-20-01, 2020-Ohio-5048; *State v. Guyton*, 12th Dist. Butler No. CA2019-12-203, 2020-Ohio-3837; *State v. Delvallie*, 8th Dist. Cuyahoga No. 109315, 2022-Ohio-470.

**{¶108}** Paskins Sixth Assignment of Error is overruled.

**{¶109}** For the foregoing reasons the judgment of the Fairfield County Court of Common Pleas is affirmed.

**{¶110}** In accordance with *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, we remand this case and order the trial court to correct the portion of its sentencing entry via a nunc pro tunc sentencing entry to include the findings required by R.C. 2929.14(C)(4) (a), (b), or (c) when ordering Paskins sentence in this case to run consecutively to his sentence in Fairfield County Court of Common Pleas, Case Number 2021 CR 0118.