OPINION
{¶ 1} Appellant, Horace Vinson Jr., appeals from the May 3, 2007 judgment entry of the Lake County Court of Common Pleas, which denied his petition for postconviction relief. For the following reasons, we affirm.
 {¶ 2} Substantive Facts and Procedural History
 {¶ 3} Appellant ("Mr. Vinson"), was convicted by jury of murder, in violation of R.C. 2903.02(B), with a firearm specification as set forth in R.C. 2941.145; and carrying *Page 2 
a concealed weapon, a felony of the fourth degree in violation of R.C. 2923. 12(A)(2) for the murder of Michael Rush ("Mr. Rush").
 {¶ 4} On October 10, 2006, Mr. Vinson's motion for new trial was denied, and on October 24, 2006, the trial court issued a judgment entry, which sentenced Mr. Vinson to a term of mandatory imprisonment of fifteen years to life for the count of felonious murder, with a mandatory, consecutive three-year term for the firearm specification; in addition to a consecutive eighteen-month term for the count of carrying a concealed weapon, for a total term of imprisonment of nineteen and one-half years.
 {¶ 5} Mr. Vinson's conviction stems from an altercation with the victim, outside of Mr. Vinson's father's ("Mr. Vinson Sr.") home during the afternoon of January 28, 2006. Mr. Vinson's fiancée at the time and mother of his child, Jennifer Gedeon ("Ms. Gedeon") purchased drugs from Mr. Rush and later became romantically involved with him, when she and Mr. Vinson lived in the same apartment complex as Mr. Rush.
 {¶ 6} Mr. Vinson and Ms. Gedeon had been subsequently evicted and were living with Mr. Vinson Sr. at the time. Mr. Vinson was aware of Ms. Gedeon's relationship with Mr. Rush, and she informed him that Mr. Rush had been making threats against him and that he was violent.
 {¶ 7} Two days before the incident, Ms. Gedeon arrived at Mr. Vinson Sr.'s home in Mr. Rush's jeep. She and Mr. Vinson fled to a motel with their baby since she was afraid that Mr. Rush would come and find them because she had decided to end her relationship with him. On the way to the motel, they abandoned Mr. Rush's vehicle in a Giant Eagle grocery store parking lot. *Page 3 
 {¶ 8} Upon their return on January 28, 2006, Ms. Gedeon informed Mr. Vinson that she was going tanning and would return in an hour or two. She left in Mr. Vinson's truck and was observed entering Rush's apartment by the property manager, Ms. Leah Coolidge ("Ms. Coolidge") at approximately 2:00 p.m. She returned to Mr. Vinson Sr.'s home and explained to Mr. Vinson Jr. that she was leaving him for Mr. Rush and that someone was coming to pick her up in fifteen minutes.
 {¶ 9} Mr. Rush arrived a short while later, and an argument ensued when Mr. Vinson yelled out of the front door, "Hey nigger, get off my lawn." He had retrieved Mr. Vinson Sr.'s gun from the hall closet after he observed Mr. Rush pull up the driveway and proceed to help Ms. Gedeon load her belongings into his vehicle.
 {¶ 10} The altercation escalated. The sole eyewitness was a bystander, Leonard Walters ("Mr. Walters"), who testified that he observed Mr. Rush running away from Mr. Vinson, with his arms down by his side. Mr. Vinson, however, testified that Mr. Rush attempted to pull a gun out of his waistband and that he mistakenly dropped the weapon to the ground. Their eyes then met, and Mr. Vinson grew fearful for his life. He pulled out his father's gun, which he had concealed in his sweatshirt, flipped around as Mr. Rush was allegedly pointing his gun at him, and began shooting.
 {¶ 11} Four shots were fired in rapid succession. Mr. Rush fell down about three houses down, and Mr. Walters observed Mr. Vinson standing on the front lawn, with a smoking gun. Mr. Vinson threw the gun down and flung himself face-down on the ground to await the arrival of the police. Mr. Vinson Sr. came running out of the house after he heard gunshots, and ran to provide assistance to Mr. Rush, begging him not to die. He called 911 around the same time as Mr. Walters. *Page 4 
 {¶ 12} Mr. Rush was taken to the hospital, where he was pronounced dead soon after arrival. He had been hit with two bullets, one of which had entered the back of his left ear and exited near his left eyebrow, and the other, which caused his death, entered in the middle of his back above his third rib, and rested on his sternum.
 {¶ 13} Mr. Rush's firearm, a .22 caliber Magnum, was fully loaded with five hollow point rounds. The gun was never fired and was retrieved from Mr. Rush's hand. Mr. Vinson's gun, an Interarms Rossi long revolver, was retrieved from the front lawn and was loaded with five bullets, four of which had been fired. A gunshot residue test ("GSR") test was performed on Mr. Vinson's left hand, and since gunshot residue was detected, following standard procedure, the right hand was not tested.
 {¶ 14} Following his conviction by jury, Mr. Vinson appealed to this court in State v. Vinson Jr., 11th Dist. No. 2006-L-238, 2007-Ohio-5199, raising four assignments of error. Specifically, Mr. Vinson argued that (1) he was provided ineffective assistance of counsel since his counsel failed to call eyewitnesses, Ms. Gedeon and Mr. Vinson Sr., to testify on his behalf; (2) he was denied his right to due process of law since he was prohibited from introducing evidence about his knowledge of the victim, which led him to be fearful for his life; (3) he was denied due process of law when his motion for new trial was overruled; and (4) he was denied due process of law since the state was permitted to introduce evidence that Mr. Rush was a "nice guy," and that Mr. Vinson was a problem tenant who fought with Ms. Gedeon constantly, had failed to pay rent and had been subsequently evicted, and had accused Ms. Coolidge of "whoring around" with Ms. Gedeon. We determined that Mr. Vinson's assignments of error were without merit and affirmed the judgment of the Lake County Court of Common Pleas. *Page 5 
 {¶ 15} On February 16, 2007, Mr. Vinson filed a petition for postconviction relief pursuant to R.C. 2953.21, alleging as he did in his first assignment of error on direct appeal in Vinson I, that he was denied effective assistance of counsel since his counsel failed to call Ms. Gedeon and Mr. Vinson Sr. to the stand, and that if these witnesses had been presented, he would have established his affirmative defense of self defense, and thus, would have been found not guilty of murder.
 {¶ 16} The trial court denied Mr. Vinson's petition for postconviction relief on May 3, 2007, finding that Mr. Vinson had failed to establish his claim of ineffective assistance of counsel since his attorney did not act unreasonably and that Mr. Vinson was unable to demonstrate prejudice occurred in this case. Specifically, the trial court found that (1) the same judge reviewed Mr. Vinson's petition that presided over the trial; (2) the two affidavits of the witnesses contained several instances of the same language; (3) Ms. Gedeon's affidavit contained hearsay statements as to what the victim told her; (4) Mr. Vinson Sr. is Mr. Vinson's father, and Ms. Gedeon is the mother of Mr. Vinson's child; and that (5) the testimony contained in the affidavits conflicted with the statements the affiants made to the police, which contradicted Mr. Vinson's testimony at trial. Thus, the trial court found that the affidavits of Ms. Gedeon and Mr. Vinson Sr. lacked credibility and should be discounted. Accordingly, Mr. Vinson did not demonstrate that his counsel erred by not calling these witnesses at trial, and his petition for postrelief conviction was denied.
 {¶ 17} Mr. Vinson filed an appeal of the denial of his petition on May 18, 2007, raising one assignment of error: *Page 6 
 {¶ 18} "The trial court erred by denying Horace Vinson Jr.'s petition for post conviction relief and thereby denied him his right to due process of law as guaranteed by the United States and Ohio Constitutions."
 {¶ 19} Postconviction Relief Standard of Review
 {¶ 20} In his sole assignment of error, Mr. Vinson alleges that he was denied his right to due process of law since the trial court denied his petition for postconviction relief. Specifically, Mr. Vinson argues that the affidavits of Mr. Vinson Sr. and Ms. Gedeon warranted an evidentiary hearing, and that his trial counsel's failure to call these witnesses had an adverse prejudicial impact on his case, thus he was deprived of effective assistance of counsel. Having already addressed this argument and finding it to be without merit on direct appeal in Vinson I, we affirm the judgment of the trial court.
 {¶ 21} R.C. 2953.21 provides, in relevant part:
 {¶ 22} "(A)(1)(a) Any person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
 {¶ 23} "* * *
 {¶ 24} "(C) Before granting a hearing on a petition * * *, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the *Page 7 
documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * * If the court dismisses the petition, it shall make and file findings of fact and conclusions of law with respect to such dismissal."
 {¶ 25} The Supreme Court of Ohio explained in State v. Gondor,112 Ohio St.3d 337, 2006-Ohio-6679 that "[i]n postconviction cases, a trial court has a gatekeeping role as to whether a defendant will even receive a hearing. In State v. Calhoun (1999), 86 Ohio St.3d 279, paragraph two of the syllabus, this court held that a trial court could dismiss a petition for postconviction relief without a hearing `where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief.' This court reversed the judgment of the appellate court inCalhoun, holding that `the trial court did not abuse its discretion in dismissing the credibility of [the] affidavits,' which served as the basis for his petition. (Emphasis sic.) Id. at ¶ 51, citingCalhoun at 286.
 {¶ 26} Thus, the court determined "that the trial court's gatekeeping function in the postconviction relief process is entitled to deference, including the court's decision regarding the sufficiency of the facts set forth by the petitioner and the credibility of the affidavits submitted. We established in Calhoun that a court reviewing the trial court's decision in regard to its gatekeeping function should apply an abuse-of-discretion standard. The consistent approach is to grant that same level of deference to the trial court in regard to its post-hearing decision." Id. at ¶ 52. *Page 8 
 {¶ 27} The Supreme Court of Ohio recently affirmed that we review postconviction proceedings for an abuse of discretion in State v.White, 118 Ohio St.3d 12, 2008-Ohio-1623, stating that "[r]ecently, inState v. Gondor, [supra], we considered the standard for appellate review of post-conviction proceedings. We held that abuse of discretion is the appropriate standard: `[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence.'" Id. at ¶ 45, citing Gondor at 60.
 {¶ 28} Thus, we review the trial court's denial of Mr. Vinson's postconviction petition for an abuse of discretion. "The term `abuse of discretion' connotes more than error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Id. at ¶ 46, citing State v. Adams (1980),62 Ohio St.2d 151, 157; State v. Keenan (1998), 81 Ohio St.3d 133, 137. See, also, State v. Hillman, 10th Dist. Nos. 06AP-1230 and 07AP-728,2008-Ohio-2341, ¶ 61.
 {¶ 29} Evidentiary Hearing
 {¶ 30} Mr. Vinson contends that he is entitled to an evidentiary hearing on his petition for postconviction relief. However, "[a] criminal defendant attempting to challenge his conviction through a petition for postconviction relief is not entitled to a hearing simply by filing the petition." State v. Delmonico, 11th Dist. No. 2004-A-0033,2005-Ohio-2882, ¶ 13, citing State v. Cole (1982), 2 Ohio St.3d 112,113. "The trial court has a duty to ensure that the petitioner adduces sufficient evidence to warrant a hearing." Id. "Specifically, R.C. 2953.21(C) provides, in relevant part: `Before granting *Page 9 
a hearing on a petition [for postconviction relief], the court shall determine whether there are substantive grounds for relief.' Where a petitioner fails to set forth substantive grounds for relief, he or she has failed to adduce adequate evidence to warrant a hearing." Id.
 {¶ 31} Thus, in order to be granted a hearing on his petition, Mr. Vinson was required to introduce adequate evidence of substantive grounds that would warrant relief.
 {¶ 32} "Further, the doctrine of res judicata precludes a defendant from raising, in a petition for postconviction relief, an ineffective assistance of counsel claim that was or could have been raised at trial or on direct appeal. Id. at ¶ 14, citing Cole at 113. "A claim is not barred by the operation of res judicata to the extent a petitioner sets forth competent, relevant, and material evidence dehors the record." Id., citing State v. Burgess, 11th Dist. No. 2003-L-069, 2004-Ohio-4395, ¶ 11. "To be genuinely relevant, the evidence dehors the record must materially advance the petitioner's claim and `meet some threshold standard of cogency.'" Id., citing State v. Schlee (Dec. 31, 1998), 11th Dist. No. 97-L-121, 1998 Ohio App. LEXIS 6363, at 5. "In the absence of such a standard, it would be too easy for the petitioner to simply attach as exhibits `evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.'" Id., citing State v. Sopjack (Aug. 22, 1997), 11th Dist. No. 96-G-2004, 1997 Ohio App. LEXIS 3789, 10, citingState v. Coleman (Mar. 17, 1993), 1st Dist. No. C-900811, 1993 Ohio App. LEXIS 1485, 21. See, also, State v. Lesure, Jr., 11th Dist. No. 2006-L-139, 2007-Ohio-4381, ¶ 22. *Page 10 
 {¶ 33} In his brief, Mr. Vinson recites the same argument as that raised on his direct appeal. Mr. Vinson again contends that the contradictory testimony of Ms. Gedeon and Mr. Vinson Sr., would have established that he fired at Mr. Rush in self-defense, and that he thus, would have been acquitted if these witnesses had been allowed to testify.
 {¶ 34} We determined this argument was without merit on direct appeal because both Ms. Gedeon and Mr. Vinson Sr.'s interviews with the police contradicted Mr. Vinson's trial testimony. Indeed, the testimony of these witnesses was an issue between the parties as the case proceeded to trial. The court, upon reconsideration, granted the state's motion to transcribe Ms. Gedeon's and Mr. Vinson's grand jury testimonies since there was concern that inconsistencies existed with their police interviews.
 {¶ 35} A review of the record revealed that if Mr. Vinson Sr. had testified, his direct examination would have opened the door to testimony that would call into question Mr. Vinson Sr.'s motive and bias as to his son, Mr. Vinson. Ms. Gedeon's police interview contained direct contradictions with Mr. Vinson's trial testimony. Thus, we held "[q]uite simply, this is not a case where appellant's counsel failed to call witnesses or failed to establish a defense. Appellant has failed to demonstrate how the failure to call these witnesses, in light of their probable testimony was so unreasonable and that it prejudiced his case to such a great degree that his counsel provided ineffective assistance." Id. at ¶ 44.
 {¶ 36} To support his petition for postconviction relief, Mr. Vinson attached affidavits of Mr. Vinson Sr. and Ms. Gedeon. However, these affidavits contain further *Page 11 
contradictions between the witnesses' previous grand jury testimonies and police interviews and provide no evidentiary support for Mr. Vinson's claim.
 {¶ 37} Specifically, Ms. Gedeon's affidavit merely reiterates her previous statements to the police, which directly contradicted Mr. Vinson's trial testimony. Mr. Vinson Sr.'s affidavit not only contradicts his police interview but also now conforms to Mr. Vinson's trial testimony. In his previous statements, Mr. Vinson Sr. denied being an eyewitness to the shooting, stating that he only came to the door after he heard gun shots being fired. However, now, Mr. Vinson Sr. states in his affidavit that he witnessed the shooting exactly as Mr. Vinson related the events at trial. Thus, these incredulous affidavits do not present evidence that was outside of the record at the time of trial, nor do they advance Mr. Vinson's claim "beyond mere hypothesis." See State v. McCaleb, 11th Dist. No. 2004-L-003, 2005-Ohio-4038, ¶ 21, citing State v. Coleman, 1st Dist. No. C-900811, 1993 Ohio App. LEXIS 1485, 22 ("evidence de hors the record must be more than evidence which was in existence and available to the defendant at the time of trial and which could and should have been submitted at trial if the defendant wished to make use of it. Simply put, the purpose of postconviction proceedings is not to afford one convicted of a crime a chance to retry his case.")
 {¶ 38} Quite simply, the affidavits are totally lacking in credibility and present no new, independent evidence, which would warrant an evidentiary hearing on Mr. Vinson's claim that he was deprived of effective assistance of counsel.
 {¶ 39} As we remarked in Vinson I: "[W]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. * * * The [Supreme *Page 12 
Court of Ohio] recognized that there are `(* * *) countless ways to provide effective assistance in any given case." State v. Allen (Sept. 22, 2000), 11th Dist No. 99-A-0050, 2000 Ohio App. LEXIS 4356, 10, citing State v. Bradley (1989), 42 Ohio St.3d 136, 142, quotingStrickland v. Washington (1984), 466 U.S. 668, 687-689. "Therefore, the court stated `judicial scrutiny of counsel's performance must be highly deferential. (* * *).'" Vinson I at ¶ 29.
 {¶ 40} "In addition, `because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. (* * *).' Id. Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." Id. (Parallel citations omitted.) "Thus, `[t]o warrant reversal, `the defendant must show that there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' * * *" Id. at ¶ 30, citing Allen at 10-11, citing Bradley at 142, quoting Strickland at 694.
 {¶ 41} Further, "counsel's professional decisions enjoy a high measure of deference; as a result, trial counsel is entitled to a presumption that his or her challenged acts or omissions involve a sound trial strategy." State v. Harco, 11th Dist. No. 2005-A-0077, 2006-Ohio-3408, ¶ 36; see, e.g., Strickland at 689.
 {¶ 42} "The decision to call a witness is "`within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" Id. at ¶ 37, quoting State v. Williams, *Page 13 99 Ohio St.3d 493, 2003-Ohio-4396, quoting State v. Treesh,90 Ohio St. 460, 490. "Hence, where the decision not to call a witness is debatable, it does not constitute ineffective assistance of counsel." Id., citingState v. Martin, 2d Dist. No. 20610, 2005-Ohio-1369, ¶ 19.
 {¶ 43} Mr. Vinson has failed to demonstrate a clear constitutional violation that he was deprived of effective assistance of counsel that would render his conviction or sentence void or voidable, and further, his claim is also barred by res judicata. As such, since we determine that no new credible, independent evidence was introduced, no evidentiary hearing on the matter was required and the trial court rightly denied Mr. Vinson's petition for postconviction relief.
 {¶ 44} The judgment of the Lake County Court of Common Pleas is affirmed.
TIMOTHY P. CANNON, J., concurs, DIANE V. GRENDELL, P.J., concurs in judgment only. *Page 1