[Cite as *State v. Watson*, 2025-Ohio-515.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2024-L-026 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| LANCE M. WATSON, | |
| Defendant-Appellant. | Trial Court No. 2023 CR 000388 |

## O P I N I O N

Decided: February 18, 2025
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric M. Levy*, 55 Public Square, Suite 1600, Cleveland, OH 44113 (For Defendant-Appellant).

EUGENE A. LUCCI, J.

{¶1} Appellant, Lance M. Watson, appeals the judgment of the Lake County Court of Common Pleas, convicting him, after entering a plea of no contest, on one count of Felonious Assault on a Peace Officer, a felony of the first degree; one count of Obstructing Official Business, a felony of the fifth degree; and one count of Resisting Arrest, a felony of the fourth degree. Watson takes issue with the trial court's sentence, the trial court's denial of his motion to continue, as well as the court's alleged failure to advise him he was entitled to an independent expert sanity evaluation where he had

previously entered a plea of not guilty by reason of insanity ("NGRI"). We affirm the judgments of the trial court.

{¶2} On March 7, 2023, Watson and his girlfriend were in a white SUV when Watson's girlfriend contacted the Mentor Police Department for help. Apparently, Watson was engaging in erratic behavior and had prior mental hospitalizations. Once police arrived, Watson was near the vehicle and was brandishing a hammer in one hand and a crescent wrench in the other. Watson was facing the police cruiser, and when an officer ordered him to drop the implements, he responded, "Just shoot me. I ain't putting nothing down."

{¶3} Watson re-entered the vehicle, with his girlfriend in the driver's seat, and he was ordered "out of the car." The woman exited the vehicle and Watson yelled, "Shut the door." An officer opened the driver's side door and observed Watson with the hammer in his left hand and a knife in his right hand. The officer then noticed a second knife which Watson had apparently retrieved and brandished. Watson was ordered to, "Drop it," but responded, "Fuck you." Watson lunged at the officer with both hands, weapons wielded, and the officer deployed a Taser, striking Watson.

{¶4} A struggle ensued, and another officer assisted in Watson's arrest. As Watson was pulled from the vehicle, he dropped both knives. Watson did not cooperate with officers during the arrest. The officers were ultimately able to control Watson and place handcuffs on him. Watson stopped physically resisting and, when patted down, officers found a sheath for one of the knives on his person. The officers recovered the hammer, crescent wrench, and both knives.

2

Case No. 2024-L-026

{¶5}    On April 28, 2023, Watson was charged in a three-count indictment. Count One alleged Felonious Assault on a Peace Officer, in violation of R.C. 2903.11(A)(2), a felony of the second degree; Count Two, Obstructing Official Business, in violation of R.C. 2921.31(A), a felony of the fifth degree; and Count Three, Resisting Arrest, in violation of R.C. 2921.33(C)(2), a felony of the fourth degree. Count One was later amended to reflect the charge was a first-degree felony, not a second-degree felony.

{¶6}    Watson entered pleas of "not guilty" and "NGRI." Watson was deemed not competent to stand trial and, on May 16, 2023, was ordered to Northcoast Behavioral Healthcare for evaluation. On October 16, 2023, Watson was found restored to competency.

{¶7}    Later, on January 11, 2024, Watson moved for a continuance of the January 23, 2024 bench trial. In his motion, Watson, through counsel, pointed out that he had refused two attempts for NGRI evaluations. Apparently, Watson was suspicious that the evaluating therapists were "agents of the State and had ill intentions." Accordingly, counsel sought a continuance of the jury trial to obtain an evaluation for purpose of his NGRI plea.[1]

{¶8}    The trial court denied the motion for continuance, concluding it had provided Watson with two separate opportunities to meet with two different experts to obtain an evaluation. The court pointed out that Watson had refused the evaluation opportunities. Watson subsequently withdrew his prior pleas of "not guilty" and "NGRI." He then entered

---

1. This matter was submitted by way of Lake County's electronic filing system. Watson's brief sets forth various additional factual allegations and statements which this court is unable to corroborate by reference to the electronic docket. Although the State asserts it is not dissatisfied with Watson's statement of the case, we cannot confirm various statements in his discussion of the procedural posture or the factual recitation. Thus, these points have been omitted from the instant opinion.

3

pleas of "no contest" to all charges in the indictment. The court subsequently found him guilty.

{¶9} Watson was sentenced on Count One to a mandatory, indefinite term of imprisonment of a minimum of six years and a maximum of nine years. On Count Two, he was sentenced to a concurrent, non-mandatory 11-month term of imprisonment; finally, on Count Three, Watson was sentenced to a concurrent, mandatory 17-month term of imprisonment. He now appeals and raises three assignments of error.

{¶10} His first assignment of error provides:

> The trial court erred and entered a sentence contrary to law when it did not consider a sentence of community control and where it imposed a mandatory prison sentence on the felonious assault of a peace officer conviction pursuant to R.C. 2929.13(F)(6) prejudicing Watson where a non-prison sanction was not considered and by denying him any future opportunity to file for judicial release.

{¶11} This court reviews felony sentences pursuant to R.C. 2953.08(G)(2). That subsection provides, in pertinent part:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.
>
> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
> . . .
>
> (b) That the sentence is otherwise contrary to law.

4

{¶12} Watson argues his mandatory sentence for Felonious Assault on a Peace Officer is contrary to law pursuant to R.C. 2929.13 and R.C. 2903.11. In particular, Watson claims that R.C. 2929.13(F)(6) only applies to offenses not set forth in R.C. 2929.13(F)(1) through (4) and that his conviction for Felonious Assault on a Peace Officer is set forth in R.C. 2929.13(F)(4). In Watson's view, the court was precluded from imposing a mandatory sentence under R.C. 2929.13(F)(6) and was required to consider community control. We do not agree.

{¶13} Watson was convicted of Felonious Assault on a Peace Officer, a felony of the first degree, in violation of R.C. 2903.11(A)(2). R.C. 2929.13(D)(1) provides that when sentencing for a first- or second-degree felony, "it is presumed that a prison sentence is necessary in order to comply with the purposes and principles of sentencing." Nevertheless, R.C. 2929.13(D)(2) states that "[n]otwithstanding the presumption . . . the sentencing court *may* impose a community control sanction," but only if the sentencing court finds that a community control sanction would (1) adequately punish the offender and protect the public from future crime, and (2) not demean the seriousness of the offense because the statutory less serious sentencing factors outweigh the more serious factors. (Emphasis added).

{¶14} R.C. 2929.13(F), which relates to sentencing, also sets forth circumstances in which the trial court shall impose a mandatory prison term. These circumstances include convictions for certain types of offenses, such as murder and rape, R.C. 2929.13(F)(1) and (2), and situations in which the statute under which the conviction was obtained requires the imposition of a mandatory term, such as the requirement of R.C.

5

2903.11(D) that a mandatory term be imposed for a felonious assault on a peace officer *involving serious injury*, R.C. 2929.13(F)(4). (Emphasis added.).

**{¶15}** Additionally, R.C. 2929.13(F)(6) provides for the imposition of a mandatory prison term upon a conviction for a first or second degree felony that is not otherwise set forth in R.C. 2929.13(F) if the offender previously was convicted of or pleaded guilty to any first or second degree felony. *Id.*, *see also State v. Kinney*, 2018-Ohio-404, ¶ 23 (1st Dist.).

**{¶16}** The trial court imposed a mandatory sentence on Watson pursuant to R.C. 2929.13(F)(6) because he had previously been convicted of breaking and entering, a second-degree felony.[2]

**{¶17}** Although Watson was convicted of and sentenced on one felony-one count of Felonious Assault on a Peace Officer, it is undisputed the officer was not physically injured. The only form of a Felonious-Assault-on-a-Peace-Officer charge that requires a mandatory term is where the officer suffers serious physical harm. *See* R.C. 2903.11(D)(1)(b) ("If the victim of the offense is a peace officer or an investigator of the bureau of criminal identification and investigation, and if the victim suffered serious physical harm as a result of the commission of the offense, felonious assault is a felony of the first degree, and the court, pursuant to division (F) of section 2929.13 of the Revised

---

2. Watson was convicted in Monongalia County, West Virginia, in 2005 of a felony-two breaking and entering. He was sentenced to one to five years in prison on that conviction. R.C. 2929.13(F)(6), the mandatory provision under which Watson was sentenced, states a term of imprisonment is mandatory if a defendant was previously convicted of "any first or second degree felony, or an offense under an existing or former law of this state, *another state*, or the United States *that is or was substantially equivalent to one of those offenses*." The West Virginia felony-two conviction is thus "substantially equivalent" to a qualifying felony-one or felony-two offense in Ohio under subsection (F)(6).

6

Case No. 2024-L-026

Code, shall impose as a mandatory prison term one of the definite prison terms prescribed for a felony of the first degree . . . .").

{¶18} In our view, the provision under R.C. 2903.11(D)(1)(b), which requires serious physical harm to the officer, sets forth a specific circumstance where felony-one Felonious Assault on a Peace Officer requires a mandatory term of imprisonment. This provision, however, does not preclude the trial court imposing a mandatory prison term under R.C. 2929.13(F)(6) because that subsection requires a mandatory sentence in an additional circumstance (where a defendant has been previously convicted of a first- or second-degree felony). Accordingly, R.C. 2929.13(F)(4) is not inconsistent with R.C. 2929.13(F)(6).

{¶19} Further, in *State v. Clark*, 2006-Ohio-6068, ¶ 8 (2d Dist.), the appellate court drew the same decision, observing:

> In our view, the legislature's recognition in the felonious assault statute of one circumstance in which a mandatory sentence was appropriate—where a peace officer is seriously injured, even on a first offense—and its recognition of additional circumstances under the sentencing statute, such as for repeat serious offenders[ or offenders who have committed a prior first- or second-degree felony], does not create a conflict.

*Id.*, *accord*, *State v. Paskins*, 2022-Ohio-4024, ¶ 101-104 (5th Dist.)

{¶20} Accordingly, Watson's sentence is mandatory under R.C. 2929.13(F)(6) because he was previously convicted and sentenced for an unrelated second-degree felony. Thus, under that subsection, the trial court was required to sentence Watson to a mandatory prison term. In this respect, Watson's argument lacks merit.

{¶21} Next, Watson argues that the trial court was not authorized to impose a mandatory sentence upon him under R.C. 2929.13(F) because the indictment failed to

7

include any notice of a prior conviction. Watson maintains that, pursuant to the United States Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *Ring v. Arizona*, 536 U.S. 584 (2002), the Sixth Amendment requires a factor that increases an authorized sentence to be included in an indictment and submitted to a trier of fact for a determination, beyond a reasonable doubt, that the State met its burden. Again, we do not agree.

{¶22} In *Apprendi*, the United States Supreme Court held that, "*[o]ther than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) *Apprendi* at 490. Even after *Blakely,* the court reiterated its position on prior prison terms as outside the realm of the now-unconstitutional judicial fact-finding. *United States v. Booker*, 543 U.S. 220 (2005). "Accordingly, we reaffirm our holding in *Apprendi*: Any fact (*other than a prior conviction*) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." (Emphasis added.) *Id.* at 244.

{¶23} In *Ring*, the United States Supreme Court repeated its holding that "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Id.* at 602, citing *Apprendi* at 482-483. Nevertheless, the Court in *Ring* did not comment on, let alone overrule, *Apprendi* and its progeny as they relate to the fact of a prior conviction.

Case No. 2024-L-026

**{¶24}** Indeed, in a salient footnote, the Court in *Ring*, 536 U.S. at 597, fn. 4, specifically emphasized that:

> Ring's claim is tightly delineated: He contends only that the Sixth Amendment required jury findings on the aggravating circumstances asserted against him. No aggravating circumstance related to past convictions in his case; Ring therefore does not challenge *Almendarez-Torres v. United States,* 523 U.S. 224, . . . (1998), which held that the fact of a prior conviction may be found by the judge even if it increases the statutory maximum sentence.

**{¶25}** Accordingly, we fail to discern how, as Watson contends, *Ring* overruled the Ohio Supreme Court's holding in *State v. Allen*, 29 Ohio St.3d 53 (1987), where the Court determined:

> Where the existence of a prior conviction enhances the penalty for a subsequent offense, but does not elevate the degree thereof, the prior conviction is not an essential element of the subsequent offense, and need not be alleged in the indictment or proved as a matter of fact.

*Id.* at syllabus. *See also State v. Brooke,* 2007-Ohio-1533, ¶ 8 (if a prior conviction transforms the offense by increasing its degree, then it is an essential element required to be proven by the State; however, if the prior conviction simply enhances the penalty, it is not).

**{¶26}** Indeed, in *Ring*, the court simply determined that fact-finding is unconstitutional where the trial court can impose death only upon finding of aggravating circumstances, such findings are the "functional equivalent" of an element of a greater offense. *Id.* at 609.

**{¶27}** In this matter, as discussed above, R.C. 2929.13(F)(1), (2), (3), and (4) did not apply to Watson. R.C. 2929.13(F)(6) did apply because Watson had previously been convicted of felony-two breaking and entering. Appellant, accordingly, received a

9

mandatory prison term under subsection (F)(6). Because Watson's prior felony-two conviction only enhanced the penalty, and not the degree of the charge, the prior conviction was not an essential element of the offense and was not required to be alleged in the indictment. *See State v. Spaulding*, 2017-Ohio-7993, ¶ 35-40 (6th Dist.). Watson's contentions to the contrary lack merit.

{¶28} Finally, under his first assignment of error, Watson asserts he was prejudiced by the trial court sentencing him under the mistaken belief a prison term was mandatory which caused it not to consider community control sanctions.

{¶29} Pursuant to the foregoing analysis, we conclude Watson's prison term, pursuant to the charges to which he pleaded guilty, required a mandatory prison term. Moreover, Watson's previous second-degree felony conviction was not an element of the crime at issue and was not required to be charged in the indictment. With these points in mind, Watson's third contention lacks merit. The trial court properly considered all requisite statutory factors, including those listed in R.C. 2929.11 and R.C. 2929.12, and did not err in imposing the underlying sentence.

{¶30} Watson's first assignment of error lacks merit.

{¶31} Watson's second assigned error provides:

{¶32} "The trial court erred when it failed to advise appellant that he was entitled to an independent expert sanity evaluation and when it denied a motion to continue trial so a sanity evaluation could be conducted where appellant had previously entered a plea of not guilty by reason of insanity."

{¶33} Under this assignment of error, Watson first argues the trial court abused its discretion in denying his motion for a continuance. We do not agree.

10

**{¶34}** In its judgment, the trial court determined:

> [T]he Defendant was deemed competent to stand trial, the Court provided the Defendant with two separate opportunities to meet with two different doctors for purposes of obtaining an evaluation to assess his mental state at the time of the alleged offenses. On each occasion, the Defendant refused to meet with the doctor. This Court is not going to continue to prolong this case because of the Defendant's continual refusal to cooperate.

**{¶35}** The court accordingly denied Watson's motion for continuance.

**{¶36}** A trial court abuses its discretion when its judgment is neither within the bounds of reason nor consistent with the record before the reviewing court. *See, e.g., State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.).

**{¶37}** "In evaluating a motion for a continuance, '[s]everal factors can be considered: the length of the delay requested, prior continuances, inconvenience, the reasons for the delay, whether the defendant contributed to the delay, and other relevant factors.'" *State v. Jordan*, 2004-Ohio-783, ¶ 45, quoting *State v. Landrum*, 53 Ohio St.3d 107, 115 (1990).

**{¶38}** Regarding the above factors, Watson did not specify the length of delay he was seeking to obtain a potential evaluation in his motion. Although it does not appear any prior continuance was sought, Watson's reason for the continuance was to seek a third opportunity to be examined. As the trial court underscored, it had previously provided Watson with two opportunities to meet with two separate doctors; each time, however, Watson refused.

**{¶39}** Watson cites to *State v. Weeks*, 1983 WL 2588 (2d Dist. Dec. 14, 1983) for the proposition that an assurance of cooperation by a defendant can be sufficient for granting a continuance. While this point may be accurate, and Watson reassured the

11

court (via defense counsel) that he would cooperate with any subsequent evaluation, the trial court was not bound by Watson's (or counsel's) alleged assurances. Watson's previous (and recent) history of non-cooperation was entitled to some weight and the trial court was entitled to conclude Watson's refusals outweighed his purported assurances of cooperation.

{¶40} In addition, the doctrine of "invited-error" is applicable. We recognize Watson harbored suspicions of court-appointed expert evaluators; for whatever reason, he claimed or at the time, believed, the evaluators had bad intentions or were government operatives that did not have his interests in mind. This, however, does not change the undisputed facts that Watson, without obvious basis, refused to be evaluated. "'The invited error doctrine precludes a litigant from taking advantage of an error that he himself invited or induced.'" *Cronin v. Cronin*, 2012-Ohio-5592, ¶ 34 (11th Dist.), quoting *Perko v. Perko*, 2003-Ohio-1877, ¶ 23 (11th Dist.). A party who induces error in the trial court cannot take advantage of such error on appeal. *State v. Williams*, 2007-Ohio-2699, ¶ 27 (12th Dist.). Here, the trial court ordered Watson's sanity evaluation, requesting two separate experts to conduct the same. Watson refused each expert's attempt. Consequently, Watson's actions prevented the evaluation from being completed.

{¶41} The trial court found the self-induced refusals problematic and inconvenient. As a result, the trial court denied the motion. Given the facts of this case and the trial court's justification for denial, we discern no abuse of discretion.

Case No. 2024-L-026

**{¶42}** Next, Watson complains the trial court erred in failing to obtain a sanity evaluation and by not notifying Watson he could obtain an independent sanity evaluation due to his former plea of NGRI.[3]

**{¶43}** R.C. 2945.371(A) provides:

> If the issue of a defendant's competence to stand trial is raised or if a defendant enters a plea of not guilty by reason of insanity, the court may order one or more evaluations of the defendant's present mental condition or, in the case of a plea of not guilty by reason of insanity, of the defendant's mental condition at the time of the offense charged. An examiner shall conduct the evaluation and the evaluation may be conducted through electronic means.

**{¶44}** The court ordered a competency evaluation, and, after Watson was deemed competent to stand trial, the trial court referred Watson for a sanity evaluation on two separate occasions. The trial court therefore met its statutory obligations.

**{¶45}** Watson further asserts that, under R.C. 2945.371(B), the trial court was required to advise him he could have an independent expert evaluation. The trial court, however, was not required to do so in this case. R.C. 2945.371(B) provides:

> If the court orders more than one evaluation under division (A) of this section, the prosecutor and the defendant may recommend to the court an examiner whom each prefers to perform one of the evaluations. If a defendant enters a plea of not guilty by reason of insanity and if the court does not designate an examiner recommended by the defendant, the court shall inform the defendant that the defendant may have independent expert evaluation and that, if the defendant is unable to obtain independent expert evaluation, it will be obtained for the defendant at public expense if the defendant is indigent.

---

3. We are aware that, generally, a guilty plea forfeits all appealable errors that might have occurred at trial unless the errors precluded him or her from entering a knowing and voluntary plea. *State v. Kelley*, 57 Ohio St.3d 127 (1991), paragraph two of the syllabus. Crim.R. 12(I), which states that "[t]he plea of no contest does not preclude a defendant from asserting upon appeal that the trial court prejudicially erred in ruling on a pretrial motion . . . ."

13

Case No. 2024-L-026

**{¶46}** The requirement that a defendant be advised that he or she can obtain an independent expert relates to situations when more than one evaluation is ordered, the defendant recommends an examiner after an NGRI plea, and the court does not designate an examiner recommended by the defendant. Here, the trial court did not err because, even though two examiners were appointed, each time Watson refused. Moreover, the record does not indicate Watson recommended an examiner that the court rejected. R.C. 2945.371(B) is therefore inapplicable.

**{¶47}** Watson's second assignment of error lacks merit.

**{¶48}** Watson's final assignment of error provides:

**{¶49}** "Appellant was denied effective assistance of trial counsel in violation of his right pursuant to the Sixth Amendment to the United States Constitution where counsel advised appellant to withdraw his plea of not guilty by reason of insanity prior to entering a plea of no contest."

**{¶50}** To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also State v. Ziefle*, 2007-Ohio-5621, ¶ 20 (11th Dist.). As such, appellant must show that counsel's performance was deficient and must additionally show prejudice resulting from the deficient performance. *State v. Jackson*, 2004-Ohio-2442, ¶ 9 (11th Dist.).

**{¶51}** Watson contends he received ineffective assistance of counsel because defense counsel advised him to withdraw his plea of NGRI and enter a plea of "no contest." Watson contends that counsel's advice to withdraw the NGRI plea without a sanity evaluation pertaining to his mental state at the time of the offense was ineffective assistance because such an evaluation "would have likely resulted in [Watson] being

14

Case No. 2024-L-026

found not sane and an acquittal pursuant to a finding of [NGRI] would have resulted." Watson, Appellate Brief, p. 31.

**{¶52}** Watson sets forth the facts surrounding his arrest and the various procedural features of the underlying case which eventuated in his plea of no contest. The thrust of Watson's argument, however, is based upon his apparent position that counsel should have more strenuously urged the trial court to grant his motion for continuance because, had an evaluation been completed, "it is highly likely [Watson] would have been found [NGRI]." Watson, Appellate Brief, p. 32. There are various flaws in Watson's position.

**{¶53}** First, this court previously noted that Watson neither waived nor forfeited his argument that the trial court erred in denying his motion to continue because his plea of "no contest" preserved the argument under Crim.R. 12(I). Still, we maintain that the trial court's denial of the motion was within its sound discretion and its justification was not an abuse of the same.

**{¶54}** Next, Watson's argument is fundamentally premised upon counsel's acts or omissions; it nevertheless ignores that, regardless of his unfounded suspicions regarding the nefarious intentions of the previous two professionals with whom Watson refused to meet, *his* acts or omissions formed the basis of the request for a continuance. Once the continuance was denied based upon Watson's acts or omissions, it is unclear how counsel's performance was deficient or how it caused Watson prejudice. We cannot speculate on findings that did not occur; and, there is no basis to conclude that a finder of fact would have accepted any such speculative findings.

15

{¶55} Finally, even if counsel offered Watson reasonably "questionable" advice, we cannot deem counsel's performance deficient for two reasons: (1) The decision was an arguable matter of strategy, and (2) any substantive communications relating to counsel's advisements are privileged and currently dehors the record.

{¶56} It has been consistently held that defense counsel's advisement whether to enter a plea is a matter of strategy, which is not second-guessed by the courts. *State v. Caskey*, 2010-Ohio-4697, ¶ 31 (11th Dist.) ("The decision to advise a criminal defendant to enter a guilty plea is a strategic decision."); *State v. Davis*, 2018-Ohio-2984, ¶ 31 (6th Dist.), quoting *State v. Moctezuma*, 2005-Ohio-5569, ¶ 24 (6th Dist.). ("The decision to accept a plea agreement is undeniably strategic.") Even though the instant matter was resolved by way of a plea of "no contest," we maintain any advice to enter the plea was reasonably strategic and afforded Watson an opportunity to challenge the pretrial motion on appeal. Hence, in this regard, we cannot find counsel's performance deficient because it falls within the gamut of strategy and, in this case, afforded Watson the benefit of challenging the ruling on the pretrial motion in this court.

{¶57} Further, we are not privy to the specific actual basis (let alone the full rationale) for Watson entering the plea of "no contest." This is because any communications between Watson and trial counsel are not part of the record. In this respect, the proper vehicle for challenging counsel's advisements which are dehors the record is a petition for post-conviction relief. "'A claim is not barred by the operation of res judicata to the extent a petitioner sets forth competent, relevant, and material evidence dehors the record.'" *State v. Vinson*, 2008-Ohio-3059, ¶ 32 (11th Dist.), quoting *State v. Delmonico*, 2005-Ohio-2882, ¶ 14 (11th Dist.) (citation omitted).

16

{¶58} Under the circumstances, we cannot find that counsel's performance was deficient. Without deficient performance, we need not assess the prejudice prong of *Strickland*.

{¶59} Watson's third assignment of error lacks merit.

{¶60} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.

ROBERT J. PATTON, P.J.,

JOHN J. EKLUND, J.,

concur.