[Cite as *State v. Bookhamer*, 2026-Ohio-1341.]

COURT OF APPEALS
KNOX COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 25CA000005 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Mount Vernon Municipal Court, Case No. 24CRB651 |
| JACK L. BOOKHAMER, JR. | |
| Defendant - Appellant | Judgment: Affirmed |
| | Date of Judgment Entry: April 8, 2026 |

BEFORE:   Robert G. Montgomery, Kevin W. Popham, and David M. Gormley, Judges

APPEARANCES: Jordon Broderick, for Plaintiff-Appellee; Todd Barstow, for Defendant-Appellant

OPINION

*Popham, J.,*

**{¶1}** Appellant Jack Bookhamer, Jr., ("Bookhamer") appeals his conviction for domestic violence entered after a jury trial in the Mount Vernon Municipal Court. For the reasons below, we affirm.

**Facts and Procedural History**

**{¶2}** On August 28, 2024, Bookhamer was charged by complaint with one count of domestic violence and one count of assault, both first-degree misdemeanors. On April 29, 2025, the trial court granted him leave to file a notice of self-defense instanter. On May 1, 2025, the matter proceeded to a jury trial.

**{¶3}** The events giving rise to the charges occurred on August 27, 2024.

**Law Enforcement Response**

{¶4} That day, both the victim, J.G., and Bookhamer separately called 9-1-1. (T. at 186, 208.) Deputy Shari Rice and Sergeant Jeremy Carpenter of the Knox County Sheriff's Office responded to the parking lot of the Palmyra Church of Christ.

{¶5} Deputy Rice arrived first and approached a female seated in a van, later identified as J.G. (T. at 135.) J.G. appeared upset. (T. at 136.) She reported that Bookhamer, the father of her children, threw a coffee cup at her and punched her in the face while driving her home. (T. at 136, 180-184.) Deputy Rice observed injuries to J.G.'s face and toe and photographed injuries to her mouth, lip, and toe. (T. at 142-146, 184, 194; State's Ex. 2, Photos 3, 5, 11.)

{¶6} Sergeant Carpenter, who arrived shortly after Deputy Rice, encountered Bookhamer near the church entrance. (T. at 128.) Bookhamer told Sergeant Carpenter that he had picked up J.G. that morning in Bellville to take her to a medical appointment in Fredericktown. After the appointment, he drove her to Mount Vernon to obtain her prescription. (T. at 120.) While waiting for the prescription, they purchased groceries, including perishable items. Bookhamer reported that J.G. received a call advising that the prescription would be further delayed. (*Id.*) He decided to return home to tend to the groceries, and an argument began during the drive. Sergeant Carpenter testified that Bookhamer stated that J.G. reached across the vehicle and attempted to shift it into park, at which point he struck her in the face. (T. at 120-121.)

{¶7} Sergeant Carpenter observed no injuries on Bookhamer but did observe an injury to the inside of J.G.'s mouth near her lip and cheek. (T. at 122-123.)

**Testimony of J.G.**

{¶8} J.G. testified that she and Bookhamer had lived together intermittently for many years and had two teenage children together. (T. at 170-173.) After a prior separation, they resumed living together in 2022. (T. at 173.)

{¶9} According to J.G., Bookhamer became upset about delays in filling J.G.'s prescription, and the discussion escalated into an argument about past relationships. (T. at 179-181.) J.G. testified that Bookhamer threw J.G.'s coffee cup at her foot, causing a small injury to her toe. (T. at 180-181; State's Ex. 2, Photo 11.) She further testified that Bookhamer struck her in the face with his hand. (T. at 182-183.) The blow cut the inside of her lip, caused soreness in her cheek, and left a bruise on her chin. (T. at 183; State's Ex. 2, Photo 3.)

{¶10} J.G. acknowledged that she struck Bookhamer in the face and attempted to grab the steering wheel after Bookhamer struck her. (T. at 184-185.) She testified that she tried to jerk the steering wheel to cause the vehicle to crash and free herself. (T. at 185.)

**Testimony of Bookhamer**

{¶11} Bookhamer testified that after the medical appointment and grocery shopping, he decided to return home when J.G. was informed that her prescription would not be ready for an hour. (T. at 206.) He became more frustrated when she later advised that the delay had been extended to two hours. (T. at 207.)

{¶12} He testified that as he began driving home, J.G. was screaming and acting aggressively. (T. at 207.) He removed her coffee cup from the cup holder to place his pop bottle there so it would not roll around and placed the coffee cup in J.G.'s purse. Bookhamer denied throwing the cup.

{¶13} Bookhamer further testified that J.G. removed the rearview mirror from the windshield and struck the windshield. He stated that she pulled at the steering wheel and attempted to shift the vehicle into park while it was moving. (T. at 208.) He testified that he did not know whether his hand or J.G.'s own hand caused the injury to her face. (*Id*.) According to Bookhamer, J.G. called the police. He then stopped in the church parking lot, exited the vehicle, contacted law enforcement, and waited for officers to arrive. (T. at 208-209.)

{¶14} Officers investigated at the scene, which resulted in Bookhamer's arrest and the charge underlying this appeal.

**Verdict and Post-Trial Motion**

{¶15} The jury found Bookhamer guilty of domestic violence and not guilty of assault. The trial court ordered a presentence investigation.

{¶16} On May 15, 2025, Bookhamer moved to disqualify a juror and for a new trial, alleging that a seated juror failed to disclose - during voir dire - personal experience with domestic violence. After conducting a hearing, the trial court denied the motion by journal entry filed May 29, 2025.

**Sentence**

{¶17} The trial court subsequently sentenced Bookhamer to 150 days in the Knox County Jail and imposed court costs.

**Assignment of Error**

{¶18} Bookhamer raises one assignment of error,

{¶19} "I. THE JURY'S VERDICT OF GUILTY AS TO DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THE STATE FAILED

TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT WAS NOT ACTING IN SELF-DEFENSE."

{¶20} In his sole assignment of error, Bookhamer contends that the State failed to disprove his claim of self-defense beyond a reasonable doubt.[1]

**Standard of Review - Manifest Weight of the Evidence**

{¶21} A claim that the State failed to disprove self-defense is reviewed under the manifest-weight standard. *State v. Messenger*, 2022-Ohio-4562, ¶ 27; *State v. Smiley*, 2025-Ohio-2666, ¶ 19 (5th Dist.).

{¶22} A manifest-weight challenge addresses the persuasive force of the evidence. *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 19. The question is whether the greater amount of credible evidence supports one side of the case over the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In conducting this review, an appellate court acts as a "thirteenth juror," examining the entire record, weighing the evidence and reasonable inferences, and considering the credibility of the witnesses. *State v. Jordan*, 2023-Ohio-3800, ¶ 17. Reversal is warranted only if the jury clearly lost its way and created a manifest miscarriage of justice. *Thompkins*, 78 Ohio St.3d at 387.

{¶23} Even so, substantial deference is afforded to the jury's determinations. The factfinder directly observes the witnesses' demeanor, tone, and manner of testifying, considerations not apparent from a written transcript. *Eastley*, ¶ 21; *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Consequently, a conviction will be reversed as

---

[1] Bookhamer does not contest that sufficient evidence was presented on each element of the offense of domestic violence.

against the manifest weight only in the exceptional case where the evidence weighs heavily against it. *Thompkins*, at 387.

{¶24} Finally, the Ohio Constitution requires that all three judges on the appellate panel concur before a conviction may be reversed as against the manifest weight. Ohio Const., Art. IV, § 3(B)(3); *Bryan-Wollman v. Domonko*, 2007-Ohio-4918, ¶¶ 2-4.

**Governing Law on Self-Defense**

{¶25} R.C. 2901.05(B)(1) states in pertinent part:

A person is allowed to act in self-defense, ***.  If, at trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, ***, the prosecution must prove beyond a reasonable doubt that the accused person did not is the force in self-defense ***.

{¶26} A defendant who raises self-defense admits the facts claimed by the prosecution but then relies on independent facts or circumstances which the defendant claims exempt him from liability. *State v. Poole*, 33 Ohio St.2d 18 (1973).

{¶27} Ohio courts have held that, in the self-defense context under R.C. 2901.05(B)(1), there are two burdens. *State v. Davidson-Dixon*, 2021-Ohio-1485, 170 N.E.3d 557 (8th Dist.), ¶ 18; *State v. Paskins*, 2022-Ohio-4024, ¶ 49, 200 N.E.3d 684 (5th Dist.). The defendant has the initial burden of production, which is the burden of producing evidence "that tends to support" that the defendant used the force in self-defense. *State v. Messenger*, 2022-Ohio-4562, ¶ 21, 171 Ohio St. 3d 227, 216 N.E.3d 653. While Ohio caselaw uses the phrase "defendant's burden of production," for all practical purposes, defendant's burden is to convince the trial judge, as gatekeeper, that the record contains sufficient evidence to support providing a self-defense instruction to the jury,

which is then tasked with deciding whether the defendant's actions were taken in self-defense. To be sure, for self-defense (or defense of another) to be in play in any given case, the defendant needs to be able to point to some evidence presented by one party or the other during trial that suggests that the defendant acted in self-defense. But the defendant need not be the party who drew out such evidence; however, once the evidence is introduced, the state bears the burden of disproving the self-defense claim.

{¶28} The state need only disprove one of the elements of self-defense beyond a reasonable doubt at trial to sustain its burden. *State v. Jackson*, 22 Ohio St.3d 281, 284, 22 Ohio B. Rep. 452, 490 N.E.2d 893 (1986); *Paskins* at ¶ 49. *State v. Carney*, 2020-Ohio-2691, ¶ 31 (10th Dist.); *State v. Staats*, 2021-Ohio-1325, ¶ 28 (5th Dist.).

{¶29} Here, the trial court instructed the jury on self-defense. Therefore, the issue for our consideration is whether the jury lost its way in concluding that the State proved beyond a reasonable doubt that Bookhamer did not act in self-defense.

**Analysis**

{¶30} The case presented the jury with two competing accounts of the altercation.

{¶31} Under the State's evidence, Bookhamer became angry over delays in filling J.G.'s prescription. A verbal dispute escalated. He threw a coffee cup, striking J.G.'s foot, and then struck her in the face. Deputy Rice documented injuries to J.G.'s lip, mouth, and toe. Sergeant Carpenter likewise observed injury inside J.G.'s mouth. J.G. testified that she did not attempt to grab the steering wheel or strike Bookhamer until after he hit her.

{¶32} If believed, this evidence established that Bookhamer initiated the physical confrontation. "[T]o establish self-defense, the following elements must be shown: (1) the [defendant] slayer was not at fault in creating the situation giving rise to the affray * * * [citations omitted] * * *." *Jackson* at 284. Here, the jury heard evidence that Bookhamer

initiated the aggression, which would negate self-defense. Moreover, striking another person … in the face during a verbal dispute supports a finding that the force used exceeded what was reasonably necessary.

{¶33} Bookhamer offered a contrary version of events. He testified that J.G. acted aggressively, attempted to shift the moving vehicle into park, and grabbed the steering wheel. According to Bookhamer's account, any contact occurred as he tried to push J.G. away to prevent an accident.

{¶34} The jury was required to assess credibility and determine which account was more persuasive. Self-defense claims often hinge on whose testimony the factfinder finds credible. *State v. Jamii*, 2023-Ohio-4671, ¶ 78 (10th Dist.); *State v. Sexton*, 2025-Ohio-718, ¶ 41 (1st Dist.); *State v. Morgan*, 2024-Ohio-5843, ¶ 40 (7th Dist.). The jury was free to believe all, part, or none of any witness's testimony. *State v. Petty*, 2017-Ohio-1062, ¶ 63 (10th Dist.); *State v. Davis*, 2024-Ohio-1504, ¶ 60 (5th Dist.). Conflicting evidence alone does not render a conviction against the manifest weight. *State v. Morris*, 2018-Ohio-5252, ¶ 51 (10th Dist.) (citations omitted).

{¶35} Here, the jury had objective evidence corroborating the State's version of events. Officers observed visible injuries to J.G.'s face and toe. By contrast, Sergeant Carpenter observed no injuries on Bookhamer. The jury could reasonably infer from this disparity that Bookhamer was the aggressor. The jury was also entitled to credit J.G.'s testimony that her attempts to grab the steering wheel occurred only after she was struck by Bookhamer.

{¶36} This is not an exceptional case in which the evidence weighs heavily against conviction. Rather, the record reflects a credibility determination squarely within the jury's province. The jury did not lose its way.

**Conclusion**

**{¶37}** After independently reviewing the entire record, weighing the evidence and reasonable inferences, and considering witness credibility, we find no indication that the jury lost its way or created a manifest miscarriage of justice. The jury was entitled to credit the State's evidence and reject Bookhamer's account. The greater weight of the credible evidence supports the conclusion that Bookhamer acted as the aggressor when he struck J.G.

**{¶38}** Accordingly, Bookhamer's conviction for domestic violence is not against the manifest weight of the evidence.

**{¶39}** Bookhamer's sole assignment of error is overruled.

For the reasons stated in our Opinion, the judgment of the Mount Vernon Municipal Court, Knox County Ohio, is affirmed.

Costs to be paid by Appellant, Jack Bookhamer, Jr.

By: Popham, J.

Montgomery, P.J. and

Gormley, J., concur